1
2
3
4
5
6
7
8
9
10
11

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS LOPEZ MUNGUIA, ) | Civil No. 07cv1016 J (AJB) |
| ) | |
| Plaintiff, ) | **ORDER:** |
| ) | |
| v. ) | **(1) ADOPTING IN PART THE REPORT & RECOMMENDATION; and** |
| ) | |
| J. FRIAS, et al., ) | **(2) GRANTING DEFENDANTS' MOTION TO DISMISS** |
| ) | |
| Defendants. ) | |

Before the Court is Magistrate Judge Anthony J. Battaglia's Report and Recommendation ("R&R") recommending the Court grant in part and deny in part Defendants J. Frias, D. Pollard, G. Siota, R. Sutton, A. Lopez, and W. Griggs' (collectively, "Defendants") Motion to Dismiss the Second Amended Complaint ("SAC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  [Doc. No. 56.]  On January 27, 2009, Judge Battaglia filed the R&R.  [Doc. No. 61.]  To date, Plaintiff has not filed an opposition despite notice and has not filed objections to the R&R.  After a thorough review of the papers and all supporting documents, this Court **ADOPTS IN PART** the R&R and **GRANTS** Defendants' motion to dismiss.

### *Factual Background*

According to the Second Amended Complaint, Defendants J. Frias, D. Pollard, A.Lopez, and W. Griggs were correctional officers, Defendant G. Siota was a correctional lieutenant, and Defendant R. Sutton was a correctional sergeant at Calipatria State Prison during the alleged incident.

On February 28, 2006, Plaintiff alleges that Defendant Frias berated him and spat on his face, pepper sprayed him, and hit him on the legs with a baton. (SAC at 4.) Defendant Frias also hit Plaintiff on the head which caused a laceration that required "staples." (*Id*.) Thereafter, Plaintiff also claims that Defendant Pollard sprayed Plaintiff with pepper-spray in the open wound causing him great pain and irritation which lasted up to four days. (*Id*.)

Following the incident, Plaintiff was led out of the building by Defendant Pollard. (*Id*.) Plaintiff saw Defendant Siota standing in front of the building with several other correctional officers. (*Id*.) At that point, Defendant Frias forcefully punched Plaintiff in his lower right rib area and Defendant Siota did not attempt to stop Defendant Frias from the attack. (*Id*.)

Defendant Griggs and another correctional officer escorted Plaintiff to the infirmary. (SAC at 5.) Defendant Griggs allegedly kept demanding that Plaintiff, who was covered with blood, walk faster and yanked Plaintiff's handcuffed right arm forcing Plaintiff to walk faster despite the fact that he was limping and in excruciating pain during the approximately one-half mile walk to the infirmary. (*Id*.)

Plaintiff claims that Defendant Sutton was involved in fabricating evidence when he asked Plaintiff's cellmate to write a statement that "[Plaintiff] was struck only once and that he slipped in the pepper spray, and fell and cracked his head open." (*Id*.) Plaintiff alleges his cellmate wrote in his statement "I said I didn't see that happen." (*Id*.)

Plaintiff further asserts that Defendant Lopez denied him his due process rights by kicking his cell door and throwing Plaintiff's Rules Violation Report under the door without allowing Plaintiff the right to postpone his disciplinary hearing, request an investigative employee, or request witnesses. (*Id*.) Plaintiff also claims that on March 25, 2006, Defendant Lopez opened his cell door "tray slot" and threw two eight ounce milk cartons at his body saying "-uck you, you piece of -hit." (*Id*.) In addition, on April 1, 2006, Defendant Lopez kicked Plaintiff's cell door and stated, "You don't want me to be your [investigative employee], you piece of -hit." (*Id*. at 5-6.)

07cv1016 J (AJB)

Plaintiff seeks to hold Defendants liable based on the theories that:  (1) Defendants Frias, Pollard, and Lopez used excessive force; (2) Defendants Lopez, Griggs, Siota, and Sutton acted with deliberate indifference to his serious medical needs; (3) Defendant Lopez violated his due process rights; (4) all Defendants implemented, maintained, and tolerated deficient policies, practices, and customs; (5) all Defendants acted with class-based animus and (6) all Defendants retaliated against him. Plaintiff seeks injunctive relief, an evidentiary hearing, general, actual, compensatory, and punitive damages, and costs.  (SAC at 12-13.)

### *Procedural History*

On June 4, 2007, Plaintiff, an inmate incarcerated at the California State Prison in Calipatria,[1] California, proceeding *pro se* and *in forma pauperis*, filed a civil rights complaint pursuant to 42 U.S.C. § 1983.  On December 11, 2007, the Court allowed the filing of Plaintiff's First Amended Complaint. [Doc. No. 20.]  On December 13, 2007, Defendants A. Lopez, W. Griggs, D. Pollard, G. Siota, and R. Sutton filed a motion to dismiss the First Amended Complaint.  [Doc. No. 22.]  On June 13, 2008, Judge Battaglia issued a report and recommendation.  [Doc No. 40.]   September 16, 2008, Defendant Frias filed a motion to dismiss the First Amended Complaint.  [Doc. No. 48.]  On September 25, 2008, the Court adopted the report and recommendation granting Defendants' motion to dismiss as to Defendants Lopez, Griggs, Pollard, Siota, and Sutton with leave to amend.  [Doc. No. 49.]  However, the Court did not address Defendant Frias' motion to dismiss since he had not been properly served at the time Defendants Lopez, Griggs, Pollard, Siota, and Sutton filed their motion to dismiss.  On October 17, 2008, the Court deferred ruling on the motion to dismiss by Defendant Frias until Plaintiff filed a Second Amended Complaint.  [Doc. No. 51.]  On December 4, 2008, Plaintiff filed his SAC, and on December 12, 2008, the Court denied Defendant Frias's motion to dismiss the First Amended Complaint as moot.  [Doc. No. 58.]  On December 11, 2008, all Defendants filed a motion to dismiss the SAC ("Motion").  [Doc. No. 57.]  On January 27, 2009, Judge Battaglia issued a report and recommendation recommending Defendants' motion to dismiss be granted in part.  [Doc. No. 61.]  Plaintiff has not filed an opposition despite notice and filed no objections to the R&R.

---

[1] On October 23, 2007, Plaintiff notified the Court that he has been transferred to Pleasant Valley State Prison. [Doc. No. 15.]

1    Defendants Frias, Pollard, Lopez, Siota, Sutton and Griggs now move to dismiss the SAC

2  pursuant to Federal Rule of Civil Procedure 12(b) and 12(b)(6).  Defendants contend that:  (1) Plaintiff

3  has failed to properly exhaust his administrative remedies; and (2) the Second Amended Complaint fails

4  to state a claim.

5                                           ***Legal Standard***

6  **I.  Motion to Dismiss**

7  **A.  Under Rule 12(b)(6)**

8    A motion to dismiss for failure to state a claim upon which relief can be granted

9  pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims in the complaint.  *Navarro v. Block*,

10  250 F.3d 729, 732 (9th Cir. 2001).  A court may dismiss a claim only when "a plaintiff can prove no set

11  of facts in support of his claim that would entitle him to relief."  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d

12  336, 338 (9th Cir. 1996).  The court hearing the motion must accept as true all material allegations in the

13  complaint, as well as reasonable inferences to be drawn from them, and the court must construe the

14  complaint in the light most favorable to the plaintiff.  *N.L. Indus., Inc. v. Kaplan*, 792 F.2d 896, 898

15  (9th Cir. 1986); *Parks School of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

16  **B.  Unenumerated Rule 12(b) Motion**

17    A plaintiff who fails to exhaust available administrative remedies prior to filing suit is subject to

18  dismissal on an "unenumerated Rule 12(b) motion, rather than a summary judgment motion."  *Wyatt v.*

19  *Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003).  Nonexhaustion under § 1997e(a) is an affirmative

20  defense and defendants have the burden of raising and proving the absence of exhaustion.  *Jones v.*

21  *Bock*, 127 S. Ct. 910, 919 (2007); *Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005) ("it is of central

22  importance that § 1997e(a) is an affirmative defense").

23  **II.  Reviewing a Magistrate Judge's R&R**

24    The duties of the district court in connection with a magistrate judge's R&R are set forth in Rule

25  72(b) and 28 U.S.C. § 636(b)(1).  *See* FED. R. CIV. P. 72(b); 28 U.S.C. § 636(b)(1) (2005).  The district

26  court must "make a de novo determination of those portions of the report . . .  to which objection is

27  made" and "may accept, reject, or modify, in whole or in part, the findings or recommendations made

28

by the magistrate judge." 28 U.S.C. § 636(b)(1) (2005); *see United States v. Raddatz*, 447 U.S. 667, 676 (1980).

When no objections are filed, the Court may assume the correctness of the Magistrate Judge's findings of fact and decide the motion on the applicable law. *Campbell v. United States Dist. Court*, 501 F.2d 196, 206 (9th Cir. 1974). Under such circumstances, the Ninth Circuit has held that "a failure to file objections only relieves the trial court of its burden to give *de novo* review to factual findings; conclusions of law must still be reviewed *de novo*." *Barilla v. Ervin*, 886 F.2d 1514, 1518 (9th Cir. 1989).

**III. Pro Se Litigant**

Where a plaintiff appears *in propria persona* in a civil rights case, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt. *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988). The rule of liberal construction is "particularly important in civil rights cases." *Ferdik v. Bonzelet*, 936 F.2d 1258, 1261 (9th Cir. 1992). However, in giving liberal interpretation to a *pro se* civil rights complaint, the court may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Id*.

*Analysis*

**I. Exhaustion of Administrative Remedies**

In their Memorandum of Points and Authorities ("P&A"), Defendants assert that Plaintiff is barred from relief on the following claims for failure to exhaust administrative remedies: (1) as to all Defendants, the Eighth Amendment claim for deliberate indifference to a serious medical need; (2) as to all Defendants, the claim for class-based animus characterized by invidious hatred, resentment, and hostility toward sensitive needs inmates (which Defendants assume to be an Equal Protection claim); (3) as to all Defendants, the claim for implementing, maintaining, and tolerating deficient policies,

1   practices, and customs; and (4) in general, all claims with respect to Defendants Siota, Sutton, and

2   Griggs.  (P&A at 9-15, 19.)[2]

3   **A. Exhaustion Requirements Under the PLRA**

4        The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e(a) to provide

5   that "no action shall be brought with respect to prison conditions under § 1983, or any other Federal

6   law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative

7   remedies as are available are exhausted."  42 U.S.C. § 1997e(a).     An inmate is required to use the

8   administrative process that the state provides in order to exhaust his administrative remedies.  *See Butler*

9   *v. Adams*, 397 F.3d 1181, 1183 (9th Cir. 2005).  The administrative review process of the California

10  Department of Corrections consists of a grievance system for prisoner complaints, in which "any inmate

11  or parolee under the department's jurisdiction may appeal any departmental decision, action, condition

12  or policy which they can reasonably demonstrate as having an adverse effect upon their welfare."  Cal.

13  Code Regs. tit. 15, § 3084.1(a).  Four levels of appeal exist:  (1) informal resolution, (2) formal written

14  appeal via a Form 602 grievance, (3) second level appeal to the institution head, and (4) third level

15  appeal to the Director of the California Department of Corrections.  The prisoner must also comply with

16  the state's "critical procedural rules" governing its administrative grievance or appeals procedure in

17  order to "properly exhaust."  *See Woodford*, 126 S.Ct. at 2388.  At each level, the inmate must submit

18  the appeal within 15 working days of the event or decision being appealed, or of receiving an unaccept-

19  able lower level appeal decision.  Cal. Code Regs. tit. 15, § 3084.6©); *see Woodford*, 126 S.Ct. at 2388

20  (holding that a California prisoner whose grievances were rejected all the way up to the third or

21  "Director's Level" of review based on his failure to comply with Cal. Code Regs., tit. 15 § 3084.6's 15-

22

23  ───────────────

24       [2]On January 16, 2009, Defendants filed a request for judicial notice of the initial Complaint
    ("Complaint") filed in this action on June 4, 2007 along with all exhibits to that Complaint (Doc. No.
25  57; *see also* P&A at 9)]; the Magistrate granted Defendants' request (R&R at 10 n.3).  Federal Rule of
    Evidence 201(b)(2) allows judicial notice of a fact that is "not subject to reasonable dispute in that it is .
26  . . (2) capable of accurate and ready determination by resort to sources whose accuracy cannot
    reasonably be questioned.  FED. R. EVID. 201(b)(2).  The court may take judicial notice of court records.
27  *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980); *Wells v. United States*, 318 U.S. 257, 260
    (1943)."A court shall take judicial notice if requested by a party and supplied with the necessary
28  information." FED. R. EVID. 201(d).  Accordingly, in reviewing the Defendants' motion and the
    Magistrate Judge's R&R herein, judicial notice is taken of the initial Complaint filed in this action on
    June 4, 2007 along with all exhibits to that complaint.

1   day time limit for submitting CDC 602 appeals, did not "properly exhaust" and therefore, his claims

2   were subject to dismissal pursuant to 42 U.S.C. § 1997e(a)).

3     The exhaustion requirement does not require Plaintiff to name all defendants in the

4   grievance as long as the prison's policies do not require such detail.  *Jones*, 127 S. Ct. at 922.

5   ("[E]xhaustion is not *per se* inadequate simply because an individual later sued was not named in

6   the grievances.").  The administrative exhaustion requirement serves two main purposes:  (1) it

7   protects administrative agency authority by giving the agency an opportunity to correct its own

8   mistakes with respect to programs it administers and by discouraging the disregard of the

9   agency's procedures; and (2) it promotes efficiency because claims can generally be resolved

10   much more quickly and economically at the administrative level.  *Woodford*, 126 S.Ct. at 2385.

11   Where a prison's grievance procedures are silent or incomplete as to factual specificity, "a

12   grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought."

13   *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009).[3]  "A grievance need not include legal

14   terminology or legal theories unless they are in some way needed to prove notice of the harm

15   being grieved."  *Id*.  Further, "a grievance . . . need not contain every fact necessary to prove each

16   element of an eventual legal claim."  *Id*.

17     Under the California regulations, a prisoner "shall use a CDC Form 602, Inmate/Parolee

18   Appeal Form to describe the problem and action requested."  Cal. Code Regs. tit. 15, § 3084.2(a).

19   CDC 602 does not require a prisoner to name or identify specific prison officials.  *Lewis v.*

20   *Mitchell*, 416 F. Supp. 2d 935, 941-42 (S.D. Cal. 2005).

21   **B.  Grievances filed by Plaintiff**

22     During the relevant time period, Plaintiff submitted two appeals that were accepted at the

23   Director's Level or Third Level appeal.  Log # CAL-A-06-00779, accepted on September 14,

24   2006, discusses alleged incidents involving Defendant Lopez, but does not name any other

25   Defendant; Log # CAL-D06-01910, accepted on January 17, 2007, discusses events primarily

26

27

28

---

  [3] *Griffin* was decided subsequent to the motion now before the Court and the Magistrate Judge's
R&R.

7

1    concerning Defendants Pollard and Frias.  (Bell Decl., Exs. 2, 3; Grannis Decl., Ex. 1.)[4]

2    Grievances specifically naming Defendants Griggs, Sutton, and Siota were also filed, but all were

3    screened out at the administrative level as being either untimely or duplicative.  (*See* Bell Decl.,

4    Exs. 4-9.)  As Plaintiff was required to comply with the established procedural requirements to

5    properly exhaust his administrative remedies, any claims based solely on allegations contained

6    within grievances properly screened out as untimely or duplicative must be dismissed as

7    unexhausted.  *See Woodford*, 458 U.S. at 90-91.  Here, all grievances screened out at the

8    administrative level were done so properly and in accordance with established procedure.  (*See*

9    Bell Decl. 1-6, Ex. 4-9; *see also* Cal. Code Regs., tit. 15 §§ 3084.3, 3084.6©); *Woodford*, 458

10   U.S. at 90-91.)  Therefore, the Court should look to Log # CAL-A-06-00779 and Log # CAL-

11   D06-01910 (hereinafter, "the Logs," collectively) to determine whether Plaintiff exhausted his

12   administrative remedies for his claims.[5]

13   **C. Exhaustion of Plaintiff's Specific Claims**

14        **Policies, Practices, and Customs.**  In his SAC, Plaintiff claims that "for a substantial

15   period of time prior to, contemporaneous with, and subsequent to plaintiff's injuries, the

16   defendants implemented, maintained and tolerated deficient policies, practices, and customs,"

17   which included the following:  assigning, supervising, and controlling correctional officers;

18   failing to properly discipline officers; failing to conduct adequate investigations and maintain an

19

20        [4] Plaintiff included an attachment at the Director's Level of appeal that raised additional allegations.  *See* note 5 *infra*.

21

22        [5] In response to the Second Level decision for Log # CAL-D06-01910, Plaintiff raised allegations not previously mentioned in his First Level and Second Level appeals; specifically, Plaintiff raised allegations against Defendant Siota regarding his alleged conduct on February 28, 2006.  (*See*

23   Bell Decl., Ex. 3; Complaint at 63-70 (Plaintiff stated that during the alleged assault, third watch officers and Defendant Siota were standing around him "all in a circle as if it was pland [sic].").)  These allegations were not addressed in the Director's Level response to Log # CAL-D06-01910.  (Bell Decl.,

24   Ex. 3; Complaint at 62-70.)  Further, Plaintiff's response to the Second Level decision of Log # CAL-D06-01910 was dated by Plaintiff "10-15-06" and received on December 28, 2006.  (Complaint at 62-

25   70.)  As Plaintiff's original grievance against Defendant Siota for conduct occurring on February 28, 2006 was properly screened out as untimely on October 13, 2006 (*see* Bell Decl., Ex. 6 (CDC 602 Form

26   received on September 14, 2006 and dated by Plaintiff June 16, 2006, two months following the February 28, 2006 incident)), essentially similar allegations raised two days following that dismissal

27   cannot give rise to a properly-exhausted claim.  (*See* Cal. Code Regs., tit. 15 § 3084.6©); *Woodford*,

28   458 U.S. at 90-91.)  Doing so contravenes the main purposes of the exhaustion requirement by allowing Plaintiff to disregard prison grievance procedures and denying the prison a fair opportunity to resolve the grievance in a quick and economical fashion.  *See  Woodford*, 126 S.Ct. at 2385.

1    effective system of reporting incidents; discouraging inmates from reporting misconduct; acting

2    to conceal or cover-up correctional officer culpability; improperly training correctional officers;

3    and fostering a code of silence.  (SAC at 8-11.)   Specifically, with regard to Defendant Sutton,

4    Plaintiff claims Sutton implemented policy by allegedly asking Plaintiff's cell-mate to make a

5    false statement that "Munguia was struck only once and that he slipped in the pepper spray, and

6    Fell [sic] and cracked his head open." (SAC at 5; Complaint at 52-53.)[6]  Further, Plaintiff

7    contends that the alleged February 28, 2006 assault and denial of medical care was the foresee-

8    able result of the aforementioned policies and customs. (SAC at 9.)   Defendants argue that

9    Plaintiff failed to properly exhaust this claim at the administrative level.  (P&A at 11.)   Defen-

10   dants have shown that this claim was not properly exhausted.

11          First, as noted by Defendants, Plaintiff failed to mention Defendants Siota, Sutton, or

12   Griggs or their alleged conduct in Log # CAL-A-06-00779 or his initial appeal of Log # CAL-

13   D06-01910.  (P&A at 11; *see* Bell Decl., Exs. 2-3.)  Further, in the Logs Plaintiff failed to allege

14   or even mention the majority of conduct which he claims evidences Defendants' deficient

15   policies, practices, and customs, including: that Defendants deficiently supervised or controlled

16   correctional officers,[7] failed to properly discipline officers, conduct adequate investigations, or

17   failed to maintain an effective system of reporting incidents.  (*See* Bell Decl., Ex. 2, 3.)  With

18   regard to the allegation against Defendant Sutton concerning the alleged attempt to get Plaintiff's

19

20          [6] In CDC P-03861 Log# 02-06-D064 Rules Violation Report, Munguia's cell-mate G. Valencia
     stated *inter alia* that shortly after the incident, Sutton went to Valencia's cell and asked him whether
21   Valencia "would be writing to say that Munguia was struck only once and slipped in the pepper spray
     and fell and cracked his head open."  Valencia reportedly responded, "I didn't see that happen, because
22   Munguia was struck several times as reported by C/O Pollard." (Complaint at 52-53.)

23          [7] Plaintiff did claim in the attachment to his Director's Level appeal that "3rd watch officers and
     Lt. Siota [stood around him] all in a circle" during the alleged assault "as if it was planned."  (Complaint
24   at 67-68.)  Plaintiff additionally asserted that "supervisory officers [were] present at the beating," failed
     to intervene, lied, and falsified reports; however, Plaintiff only names Defendant Siota as one who was
25   present at the "beating."  (*Id.*)  Assuming *arguendo* such factual allegations are sufficient to give rise to
     this claim, Plaintiff failed to raise said allegations in Log # CAL-A-06-00779 or in his initial appeal of
26   Log # CAL-D06-01910.  As reviewing officials were not apprised of the nature of Siota's participation
     in the initial appeal of Log # CAL-D06-01910, *see Griffin*, 557 F.3d at 1120, and because his grievances
27   concerning Siota's alleged conduct on February 28, 2006 were properly screened out as untimely or
     duplicative (*see* Bell Decl., Ex. 3, 6, 8; Complaint at 83-84; *see also* note 5 *supra*), the allegations in
28   Plaintiff's attachment to his Director's Level appeal concerning Siota's conduct provide no basis for this
     claim.  (*See* Cal. Code Regs., tit. 15 §§ 3084.3(c)(2), 3084.6©); *Woodford*, 458 U.S. at 90-91; *Griffin*,
     557 F.3d at 1120.)

1  cell-mate to make the false statement, in the Logs Plaintiff mentions neither Defendant Sutton nor

2  the alleged conversation between said Defendant and Plaintiff's cell-mate, despite Plaintiff

3  having the apparent opportunity to do so.[8]  Additionally, in the grievance received on June 27,

4  2006, there is no mention of Sutton's alleged discussion with Valencia.  (*See* Bell Decl., Ex. 4.)

5  Even if the alleged incident was mentioned in said grievance, that grievance was properly

6  screened-out as untimely.  (*See* Bell Decl., Ex. 4 (dated by Plaintiff on June 21, 2006 and

7  screened out on July 5, 2006); *see also* Bell Decl., Ex. 7 (grievance against Sutton received on

8  October 23, 2006, dated by Plaintiff as both June 21, 2006 and October 18, 2006, and screened

9  out as duplicative on October 25, 2006).)

10        Without more, the allegations raised in Plaintiff's properly-exhausted grievances could

11  not reasonably indicate to reviewing officials that the conduct alleged therein pertained to

12  anything other than the conduct of officers Lopez, Frias, and Pollard acting without authority and

13  *outside* the framework of established policy.  (*See, e.g.*, Bell Decl., Ex. 3; Complaint at 83-84

14  (Plaintiff asserted that Pollard's unlocking the security deadlock was "unauthorized[]" and

15  without the presence of a supervisor).)  If anything, the initial appeal of Log # CAL-D06-01910

16  suggests that there were no supervisors participating in the incident.  (*See* Bell Decl., Exs. 2

17  (showing Plaintiff asked Pollard and Frias for a superior officer during the February 28, 2006

18  incident when there was no supervisor present), 3 (Plaintiff claimed Pollard was blocking the

19  alleged assault from DC Control); Complaint at 84-85.)  While it is acknowledged that "a

20  grievance . . . need not contain every fact necessary to prove each element of an eventual legal

21  claim," *Griffin*, 557 F.3d at 1121, the factual allegations and legal claims properly raised in the

22  Logs could not reasonably lead a reviewing prison to conclude that the alleged misconduct was,

23  in any way, the product of any policy set out or ratified by administrators or supervisory

24

25        _____

26  [8] The statement by inmate G. Valencia supporting Plaintiff's deficient policies, practices, and customs claim against Sutton was published in a CDC 115-C Report signed by Correctional Officer Lopez on April 5, 2006.  (*See* SAC at 5; Complaint at 59-60.)  In Log # CAL-D06-01910, Plaintiff

27  refers to statements made by Pollard printed in the same Report. (Bell Decl., Ex. 3; Complaint at 51.) Moreover, Valencia's statements were printed in part on the same page as the statement of Pollard

28  Plaintiff referred to in Log # CAL-D06-01910.  (Complaint at 51.)  Thus, the record evidences Plaintiff likely had knowledge of Sutton's alleged attempt to elicit the statement from Valencia at the time he submitted the Log # CAL-D06-01910 grievance  but  failed to mention it at that time.

personal.  (*See id*.)  Thus, Plaintiff failed to properly exhaust this claim.  Therefore, the Court **ADOPTS** the R&R, **GRANTS** Defendants' motion, and **DISMISSES** this claim with respect to all Defendants.

**Excessive Force.**  Plaintiff contends that the alleged February 28, 2006 assault was the foreseeable result of the implementation of deficient policies and customs.  (SAC at 9.)  Defendants argue that Plaintiff failed to exhaust administrative remedies with regard to claims against Siota, Sutton, and Griggs; therefore the Court must look to whether Plaintiff properly exhausted his administrative remedies with respect to said Defendants for this claim.  (P&A at 10, 18.)[9]

As discussed above, Plaintiff failed to submit timely grievances against Defendants Siota, Sutton, and Griggs or state factual or legal allegations in Log # CAL-A-06-00779 or his initial appeal of Log # CAL-D06-01910 to the extent necessary to reasonably lead a reviewing official to conclude that Plaintiff was aggrieved by established policies, practices, or customs.  Furthermore, neither Log # CAL-A-06-00779 nor the initial appeal of Log # CAL-D06-01910 supplied reviewing officials with any other indicium that Defendants Siota, Sutton, or Griggs were responsible for the February 28, 2006 alleged assault or use of excessive force.  (*See* Bell Decl., Exs. 2, 3.)  As mentioned above, the information contained in the initial appeal of Log # CAL-D06-01910 would likely lead reviewing officials to conclude that Pollard was attempting to conceal the alleged incident from the other officers.  (*See, e.g.,* Bell Decl., Ex. 3 (Plaintiff claimed Pollard was blocking the alleged assault from DC Control and the view of witnesses.)  Thus, reviewing officials could not have been reasonably alerted to Defendants Siota, Sutton, or Griggs's  alleged participation in the incident and were thereby denied the opportunity to make a timely and efficient investigation focusing on any impropriety by said Defendants.  *See Woodford*, 126 S.Ct. at 2385; *Griffin*, 557 F.3d at 1120. Therefore, Plaintiff failed to exhaust his administrative remedies with respect to this claim.  Accordingly, the Court **ADOPTS** the R&R, **GRANTS** Defendants' motion, and **DISMISSES** this claim with respect to Defendants Siota, Sutton, and Griggs.

---

[9] Defendants do not ask the Court to dismiss the excessive force claims against Lopez, Frias, and Pollard on the grounds of failure to exhaust administrative remedies.  (*See* P&A at 19.)

**Medical Care.**  Defendants argue that Plaintiff's appeals are "silent as to claims for interference with or interruption of medical care," and therefore Plaintiff's claim for deliberate indifference to a serious medical need should be dismissed with respect to all Defendants for failure to exhaust administrative remedies.[10]  (P&A at 11.)  In his SAC, Plaintiff claims that Defendants Lopez, Siota, Sutton, and Griggs deliberately and with wanton disregard delayed his seriously-needed medical treatment after the alleged assault on February 28, 2006.  (*See* SAC at 12-13.)  Further, Plaintiff argues that the alleged February 28, 2006 assault and denial of medical care was the foreseeable result of the aforementioned policies and customs.  (*Id*. at 9.)  Specifically, with regard to Defendant Griggs, Plaintiff asserts that, when he was taken to the infirmary following the February 28, 2006 incident, Griggs and another unidentified correctional officer: (1) kept demanding that Plaintiff walk faster; (2) continued to yank his handcuffed right arm behind his back forcing him to walk faster and faster despite the fact that Plaintiff was limping and experiencing excruciating pain; and (3) could have made an effort to relieve Plaintiff's burden of pain by not acting with malice and unprofessional and unreasonable conduct.  (SAC at 5.)  However, neither of the Logs mention anything pertaining to the alleged incident involving Defendant Griggs or the denial of medical care, nor do they provide any other detail that could reasonably alert the reviewing official to any problem concerning Plaintiff's alleged denial of medical treatment.  (*See* Bell Decl. Exs. 2, 3; Complaint at 65-69.)  Such information would be necessary to "allow prison officials to take appropriate responsive measures."  *See Griffin*, 557 F.3d at 1120.  Thus, Plaintiff failed to exhaust his administrative remedies with respect to this claim.  Therefore, the Court **ADOPTS** the R&R, **GRANTS** Defendants' motion, and **DIS-MISSES** this claim with respect to all Defendants.

**Class-Based Animus.**  Plaintiff claims that Defendants "were motivated by class-based animus, characterized by invidious anti-sensitive needs/inmate hatred, resentment and hostility." (SAC at 9-11.)  Defendants contend *inter alia* that Plaintiff's claim for class-based animus should be dismissed for failure to exhaust administrative remedies.  (P&A at 11.)  In the Logs, Plaintiff

---

[10] Defendants note that this claim was raised for the first time in the Second Amended complaint but do not move to dismiss on such grounds.  (P&A at 5 n.2.)

1  mentioned nothing to the effect that he was a sensitive needs inmate nor did he provide any

2  indication that he was being singled out as one.  Here, none of the factual allegations or legal

3  claims mentioned in the Logs could provide any indication that Plaintiff was receiving unequal

4  treatment, whether as a sensitive needs inmate or otherwise.  *See Village of Willowbrook v. Olech*,

5  528 U.S. 562, 120 S.Ct 1073, 1074 (2000); *see also Johnson v. Johnson*, 385 F.3d 503, 518 (5th

6  Cir. 2004) (finding a prisoner's administrative grievances, when failing to mention race at all, did

7  not give sufficient notice to prison officials at the administrative level to constitute exhaustion of

8  a race-based Equal Protection claim).  Thus, Plaintiff did not properly exhaust his administrative

9  remedies with respect to this claim.   Therefore, the Court **ADOPTS** the R&R, **GRANTS**

10  Defendants' motion, and **DISMISSES** this claim with respect to all Defendants.

11      **Retaliation.**  In addition to the claims addressed above, Plaintiff claims that all Defen-

12  dants retaliated against him.  (SAC at 13.)  Defendants argue that Plaintiff failed to exhaust

13  administrative remedies with regard to claims against Siota, Sutton, and Griggs; therefore, the

14  Court must determine whether Plaintiff properly exhausted his administrative remedies with

15  respect to said Defendants for this claim.  (P&A at 10, 18.)

16      Plaintiff alleges that Defendant Siota failed to make any attempt to stop Pollard from

17  assaulting him despite having an obligation to protect Plaintiff.   (SAC at 4.)  Plaintiff also claims

18  Defendant Griggs caused Plaintiff excruciating pain when taking him to the infirmary.  (*Id.* at 5.)

19  Finally, Plaintiff alleges that Defendant Sutton was involved in fabricating evidence when he

20  allegedly asked inmate Valencia to make a false statement of the February 28, 2006 incident

21  involving Pollard and Frias.  (*Id.*)  As stated above, Log # CAL-A-06-00779 discusses alleged

22  incidents involving Defendant Lopez, but does not name any other Defendant nor does it address

23  any alleged conduct of Defendant Siota, Sutton, or Griggs.  Nor does the initial appeal of Log #

24  CAL-D06-01910 contain a modicum of factual detail concerning any of the alleged conduct of

25  said Defendants.[11]  While it is acknowledged that the grievance procedure did not require Plaintiff

26

27      [11] In the attachment to his Director's Level appeal, Plaintiff mentioned that he is "still being
retaliated against," though he doesn't specify how or by whom.  (Complaint at 67-68.)  Plaintiff had
28  made no mention of retaliatory acts by Siota, Sutton, or Griggs in his previous appeals in Log # CAL-
D06-01910.  As reviewing officials were not apprised of the nature of Siota, Sutton, or Griggs's conduct
in the initial appeal of Log # CAL-D06-01910, *see Griffin*, 557 F.3d at 1120, and because Plaintiff's

1   to name all Defendants, *see Jones*, 127 S. Ct. at 922, here the allegations in Log # CAL-A-06-

2   00779 or in his initial appeal of Log # CAL-D06-01910 could not reasonably give reviewing

3   officials notice that Plaintiff had been harmed by any retaliatory conduct concerning Defendants

4   Siota, Sutton, or Griggs.  Such notice would be necessary to give the prison a fair opportunity to

5   facilitate a resolution to the alleged problem concerning said Defendants.  *See Johnson* 385 F.3d

6   at 522 ("We are mindful that the primary purpose of a grievance is to alert prison officials to a

7   problem . . . .") (cited with approval in *Jones*, 549 U.S. at 923).

8   　　　　Thus, based on the allegations in the Logs, and due to the fact that all grievances

9   specifically naming defendants Siota, Sutton, and Griggs were properly screened-out as either

10   untimely or duplicative, Plaintiff has not exhausted his administrative remedies with respect to

11   the retaliation claim against Defendants Siota, Sutton, and Griggs.  Therefore, the Court

12   **ADOPTS** the R&R, **GRANTS** Defendants' motion, and **DISMISSES** the retaliation claim

13   against Defendants Siota, Sutton, and Griggs.

14   　　　　**Exhausted Claims.**  The Magistrate Judge found the claims against Defendants Frias and

15   Pollard for excessive force and retaliation and against Defendant Lopez for due process,

16   excessive force, and retaliation had been properly exhausted.  (R&R at 6.)  Defendants do not

17   contend that these claims were not properly exhausted.  (*See* P&A at 10, 19.)  Thus, these claims

18   against Defendants Frias, Pollard, and Lopez are considered properly exhausted.  Therefore, these

19   claims will now be addressed.

20   **IV. Motion to Dismiss Under Rule 12(b)(6)**

21   **A. Eleventh Amendment Immunity**

22

23

24   ───────────────

25   grievances concerning said Defendants' alleged conduct were properly screened out as untimely or duplicative (*see* Bell Decl., Ex. 1-9; Complaint at 63-70, 83-84), the allegations in Plaintiff's attachment to his Director's Level appeal concerning Siota, Sutton, or Griggs' conduct provide no basis for this

26   claim.  *See* Cal. Code Regs., tit. 15 §§ 3084.3(c)(2), 3084.6©); *Woodford*, 458 U.S. at 90-91; *Griffin*, 557 F.3d at 1120.  As discussed above, allowing Plaintiff to tack-on additional allegations at the

27   eleventh hour of his Log # CAL-D06-01910 appeal when his grievances naming Defendants Siota, Sutton, and Griggs were already properly screened out would contravene the main purposes of the

28   exhaustion requirement; it would allow Plaintiff to disregard prison grievance procedures and would deny the prison a fair opportunity to resolve the grievance in a quick and economical fashion.  *See* *Woodford*, 126 S.Ct. at 2385.

1    Defendants seek dismissal of Plaintiff's damages claims to the extent they are based on

2    acts taken in their official capacities and the dismissal of Plaintiff's claims for injunctive relief.

3    (P&A at 13-14).   Plaintiff states that he is suing Defendants in both their official and individual

4    capacities for monetary damages and injunctive relief.  (SAC at 2-3.)

5    While the Eleventh Amendment bars a prisoner's § 1983 damages claims against state

6    actors sued in their official capacities, *Will v. Michigan*, 491 U.S. 58, 66 (1989) (The Eleventh

7    Amendment bars suits by litigants who seek remedy against a state for alleged deprivations of

8    civil liberties "unless the State has waived its immunity . . . or unless Congress has exercised its

9    undoubted power under § 5 of the Fourteenth Amendment to override that immunity.") (internal

10   citations omitted), it does not bar damage actions against state officials in their personal or

11   individual capacities. *Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Pena v. Gardner*, 976 F.2d 469,

12   472-73 (9th Cir. 1992).  When a state actor is alleged to have violated both federal and state law

13   and is sued for damages under § 1983 in his individual or personal capacity, there is no Eleventh

14   Amendment bar, even if state law provides for indemnification.  *Ashker v. Cal. Dep't of Correc-*

15   *tions*, 112 F.3d 392, 395 (9th Cir. 1997).  The Eleventh Amendment prohibits actions for

16   damages against an "official's office," that is, actions that are in reality suits against the state

17   itself. *Stivers v. Pierce*, 71 F.3d 732, 749 (9th Cir. 1995).  The Eleventh Amendment, however,

18   does not bar actions against state officers in their official capacities as to declaratory judgment or

19   injunctive relief. *Chaloux v. Killeen*, 886 F.2d 247, 252 (9th Cir. 1989).

20   **Injunctive Relief.**  Plaintiff only seeks injunctive relief with regard to his claim for

21   deliberate indifference to serious medical needs.  Because the Court **FINDS** that the claim for

22   deliberate indifference to serious medical needs should be dismissed for failure to exhaust

23   administrative remedies, the Court **ADOPTS** the Magistrate Judge's R&R with respect to this

24   recommendation and **DISMISSES** Plaintiff's request for injunctive relief.

25   **Damages.**  The Magistrate Judge further concluded that the Eleventh Amendment barred

26   Plaintiff from recovering damages against Defendants in their official capacities and recom-

27   mended that Defendants' motion to dismiss on Eleventh Amendment grounds be granted to the

28   extent that Plaintiff seeks damages against Defendants in their official capacities.  (*Id*. at 8.)

Here, Plaintiff is seeking damages against Defendants in their official capacities (*see* SAC at 13), and the Eleventh Amendment bars such actions. *Will*, 491 U.S. at 66. Therefore, the Court **ADOPTS** the R&R and **GRANTS** Defendants' motion to dismiss on Eleventh Amendment grounds to the extent that Plaintiff seeks damages against Defendants in their official capacities.

Although the claims for damages against Defendants in their official capacities are barred, *id.*, the Eleventh Amendment imposes no bar to Plaintiff's damages action against Defendants in their personal capacities. *See Hafer*, 502 U.S. at 31. Therefore, the Court should now consider Defendants' motion to dismiss on those claims.

**B.  Section 1983 Claims**

**Excessive Force as to Defendants Frias and Pollard.**  Defendants do not ask the Court to dismiss the excessive force claims against Defendants Frias and Pollard. (*See* P&A at 19, ¶ 4.) Nevertheless, the R&R recommended the denial of the motion to dismiss the excessive force claims against Frias and Pollard. As there is no motion before the Court to dismiss the excessive force claim against said Defendants, the Court **DECLINES TO ADOPT** the R&R with respect to its recommendation denying the motion to dismiss the excessive force claim against Defendants Frias and Pollard.

**Excessive Force as to Defendant Lopez.**  Plaintiff claims that Defendant Lopez violated his Eighth Amendment rights to be free from excessive force when he threw two eight-ounce milk cartons at Plaintiff's body, saying "-uck you, you piece of -hit," and when he kicked Plaintiff's cell door stating "[y]ou don't want me to be your [investigative employee] you piece of -hit." (SAC at 5-6.) Defendants argue that Plaintiff failed to sufficiently allege a claim of excessive force against Defendant Lopez. (P&A at 15-16.)  The Magistrate Judge found in favor of the Defendants with respect to this argument and recommended that this Court dismiss the claim of excessive force as to Defendant Lopez.

Claims of excessive use of force arising after conviction and sentence are analyzed under the Eighth Amendment's "cruel and unusual punishment" analysis. *See Hudson v. McMillian*, 503 U.S. 1 (1992). The United States Supreme Court has established that the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by

1   the Eighth Amendment.  *Id*. at 5.  In determining whether prison officials inflicted "unnecessary

2   and wanton pain," the relevant question is whether "force was applied in a good faith effort to

3   maintain or restore discipline or was applied maliciously and sadistically for the very purpose of

4   causing harm."  *Id*.  (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)).  Although it is not

5   necessary for plaintiff to demonstrate a significant injury, the *de minimis* use of physical force

6   does not give rise to a federal cause of action as long as the use of force is not "repugnant to the

7   conscience of mankind."  *Id*. at 9.

8          Plaintiff's SAC does not allege injury resulting from Defendant Lopez's conduct.  Further,

9   none of the facts alleged in Plaintiff's SAC show that Defendant Lopez's alleged conduct

10  constituted force "repugnant to the conscience of mankind."  *See Hudson*, 503 U.S. at 9.

11  Therefore, the Court **ADOPTS** the R&R and **GRANTS** Defendants' motion to dismiss the claim

12  of excessive force as to Defendant Lopez.

13         **Due Process Claim Against Defendant Lopez.**  Plaintiff alleges Defendant Lopez

14  violated his Fourteenth Amendment Due Process rights when he kicked Plaintiff's door and threw

15  Plaintiff's Rules Violation Report under the door without allowing Plaintiff the right to postpone

16  his disciplinary hearing, request an investigative employee, or request witnesses.  (SAC at 5-6.)

17  Defendants argue that the claim of due process rights violation should be dismissed because

18  Plaintiff received all the process he was due.  (P&A at 14.)

19         The procedural guarantees of the due process clause of the Fourteenth Amendment apply

20  only when a constitutionally-protected liberty or property interest is at stake.  *See Ingraham v.*

21  *Wright*, 430 U.S. 651, 672 (1977); *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972); *Erickson v.*

22  *United States*, 67 F.3d 858, 861 (9th Cir. 1995); *Schroeder v. McDonald*, 55 F.3d 454, 462 (9th

23  Cir. 1995).  Liberty interests can arise from the Constitution or may be created by state law or

24  regulations.  *See Hewitt v. Helms*, 459 U.S. 460, 466 (1983); *Meachum v. Fano*, 427 U.S. 215,

25  224-27 (1976); *Wolff v. McDonnell*, 418 U.S. 539, 557-58 (1974); *Smith v. Sumner*, 994 F.2d

26  1401, 1405-06 (9th Cir. 1993).  A prisoner has a liberty interest in good time credits.  *Wolff v.*

27  *McDonnell*, 418 U.S. 539, 557 (1974).  Although a prisoner enjoys certain due process rights in a

28  disciplinary hearing, "the full panoply of rights due a defendant in [criminal] proceedings do not

1   apply." *Id*. at 556. "Where a prison disciplinary hearing may result in the loss of good times

2   credits, . . . the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an

3   opportunity, when consistent with institutional safety and correctional goals, to call witnesses and

4   present documentary evidence in his defense; and (3) a written statement by the factfinder of the

5   evidence relied on and the reasons for the disciplinary action." *Superintendent v. Hill*, 472 U.S.

6   445, 454 (1985) (citation omitted).

7         Of the three procedural requirements due to an inmate in a prison disciplinary hearing,

8   Plaintiff only contends that he was denied the opportunity to call witnesses. (*See* SAC at 5.) In

9   concluding that Plaintiff received all process that was due, the Magistrate Judge found *inter alia*

10   that: (1) the investigative employee interviewed witnesses using Plaintiff's questions; (2) a

11   number of inmates Plaintiff requested as witnesses were interviewed; (3) Plaintiff acknowledged

12   receipt of all reports and was ready to proceed on the day of the hearing; and (4) Plaintiff had

13   requested witnesses at his hearing but that he later declined their presence. (R&R at 10.) Based

14   on the record, Plaintiff received all process that was due. Therefore, the Court **ADOPTS** the

15   R&R and **GRANTS** Defendants' motion to dismiss the Due Process claim against Defendant

16   Lopez.

17         **Retaliation Claim Against Defendants Lopez, Frias, and Pollard.** Plaintiff claims the

18   acts of Defendant Lopez of throwing Plaintiff's Rules Violation Report under the door without

19   allowing Plaintiff the right to postpone his disciplinary hearing, request an investigative em-

20   ployee, or request witnesses, and of throwing milk cartons at Plaintiff, muttering profanity, and

21   kicking his cell door were done in retaliation for Plaintiff's grievance regarding the February 28,

22   2006 assault. (SAC at 5-6, 10-12.) Plaintiff also claims that Defendants Frias and Pollard

23   retaliated against him when they allegedly beat Plaintiff about the head and body on February 28,

24   2006. (*Id*. at 6-7, 10-12.) Defendants claim that Plaintiff does not state a claim for retaliation

25   against Defendants Lopez, Frias, or Pollard. (P&A at 16-16.)

26         The First Amendment provides protections against "deliberate retaliation" by prison

27   officials against an inmate's exercise of his right to petition for redress of grievances. *See*

28   *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989). The Ninth Circuit has

1   held that the right of meaningful access to the courts extends to established prison grievance

2   procedures.  *See Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989); *see also Hines*

3   *v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997). "A prisoner's right of meaningful access to the

4   courts, along with his broader right to petition the government for a redress of grievances under

5   the First Amendment, precludes prison authorities from penalizing a prisoner for exercising those

6   rights."  *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995).

7          In the prison context, an inmate suing prison officials pursuant to § 1983 for First

8   Amendment retaliation must allege facts to show:  "(1) An assertion that a state actor took some

9   adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that

10  such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did

11  not reasonably advance a legitimate correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567-

12  68 (9th Cir. 2005) (citations omitted).  Plaintiff must show that the specific constitutionally

13  protected conduct was a "substantial" or "motivating" factor in the defendant's decision to act.

14  *Soranno's Gasco*, 874 F.2d at 1314.

15         With respect to Defendant Lopez, Defendants contend that Lopez's alleged conduct would

16  not have deterred "a person of ordinary firmness . . . from pursuing [Plaintiff's] claim."  (P&A at

17  17.)  Defendants argue that the alleged treatment Plaintiff received from Lopez is incomparable to

18  that which the Plaintiff in *Rhodes* allegedly received, thus supporting their contention that

19  Lopez's alleged conduct does not have the requisite "chilling effect" for this claim.  In *Rhodes*,

20  the Plaintiff was allegedly retaliated against over and over again by confiscation and destruction

21  of his personal property, being threatened with transfer, and being physically assaulted after filing

22  his grievances.  *See Rhodes*, 408 F.3d at 564-65.  The Magistrate Judge concluded that, while

23  Plaintiff has alleged facts sufficient to satisfy the first three prongs of a retaliation claim with

24  respect to Defendant Lopez, he failed to allege facts sufficient to show:  (1) that Lopez's actions

25  chilled his exercise of his First Amendment right; and (2) that Lopez's actions did not advance

26  legitimate penological goals.  (R&R at 11, citing *Barnett v. Centoni*, 31 F.3d 813, 815-816 (9th

27  Cir. 1994).)

28

19

1

2

3

4

5

6

7

8

9

Assuming the factual allegations with regard to Defendant Lopez are true, said allegations do not support a showing that Defendant Lopez's acts would chill or silence a person of ordinary firmness from future First Amendment activities.  *See Rhodes*, 408 F.3d at 568 (finding Rhodes's First Amended Complaint to be "the very archetype of a cognizable First Amendment retaliation claim") (citing *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001); *Hines*, 108 F.3d at 269; *Pratt v. Rowland*, 65 F.3d 80, 807 (9th Cir. 1995); *Valandingham*, 866 F.2d at 1138).  Further, the alleged facts do not support a showing that Lopez's actions did not advance legitimate penologi-cal interests.  *See Barnett*, 31 F.3d at 815-816.   Therefore, the Court **ADOPTS** the R&R, **GRANTS** Defendants's motion, and **DISMISSES** the retaliation claim against Defendant Lopez.

10

11

12

13

14

15

16

17

18

19

20

Defendants contend, and the Magistrate Judge agreed, that Plaintiff has not stated a claim against Defendants Frias and Pollard because Plaintiff failed to allege protected conduct that was being retaliated against when said Defendants allegedly hit and pepper sprayed him on February 28, 2006.  (P&A at 17; R&R at 11.)   Plaintiff cannot sue said Defendants pursuant to § 1983 for First Amendment retaliation without alleging facts to show that the alleged retaliation was against protected conduct.  *See Rhodes*, 408 F.3d at 567-68.  In his SAC, the factual allegations Plaintiff raises to support his claim against Frias and Pollard make no mention of any protected conduct for which he was being retaliated against.  (*See generally* SAC at 4.)  Thus, Plaintiff has failed to state a claim for First Amendment retaliation against said Defendants.  Therefore, the Court **ADOPTS** the R&R, **GRANTS** Defendants' motion, and **DISMISSES** the retaliation claim against Defendants Frias and Pollard.

21

22

23

*Conclusion*

For the reasons above, the Court **ADOPTS IN PART** the R&R and:

24

25

26

27

(1) **GRANTS** Defendants' motion to dismiss **with prejudice** on grounds of failure to exhaust administrative remedies with respect to claims for (a) deliberate indifference to serious medical needs, (b) implementing, maintaining, and tolerating deficient policies, practices, and customs, and ©) class-based animus with respect to all Defendants.

28

20

(2) **GRANTS** Defendants' motion to dismiss **with prejudice** on grounds of failure to exhaust administrative remedies with respect to claims of excessive force and retaliation against Defendants Siota, Sutton, and Griggs.

(3) **GRANTS** Defendants' motion to dismiss **with prejudice** the claim for injunctive relief;

(4) **GRANTS** Defendants' motion to dismiss **with prejudice** on Eleventh Amendment grounds to the extent that Plaintiff seeks damages against Defendants in their official capacity;

(5) **GRANTS** Defendants' motion to dismiss **without prejudice** the claims for excessive force and due process violation with respect to Defendant Lopez; and

(6) **GRANTS** Defendants' motion to dismiss **without prejudice** the retaliation claims against Defendants Lopez, Frias, and Pollard.

The excessive force claims against Defendants Frias and Pollard remain.

**IT IS SO ORDERED.**


DATED: September 24, 2009

_____
HON. NAPOLEON A. JONES, JR.
United States District Judge


cc:  Magistrate Judge Battaglia
        All Counsel of Record